UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ANGEL DIX

VERSUS

LOUISIANA HEALTH SERVICES
& INDEMNITY COMPANY d/b/a
BLUE CROSS/BLUE SHIELD OF
LOUISIANA, BARBARA J. GRANT
and SCOTT A. KALE, M.D.

CIVIL ACTION

NO. 12-319-BAJ-SCR

RULING AND ORDER

Before the Court is **a Motion to Dismiss (Doc. 19)**, filed by Defendant Scott A. Kale, M.D. ("Dr. Kale"), seeking an order from this Court dismissing Plaintiff Angel Dix's ("Mrs. Dix") claims against him, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dr. Kale asserts that he is (1) not the proper defendant for a benefits claim under the Employment Retirement Income Security Act of 1974 ("ERISA"), and (2) Plaintiff's claim of fraud "relates to" an employee welfare benefit plan and is therefore preempted by ERISA. Plaintiff opposes the motion, asserting that the claims against Defendant are proper, not preempted by ERISA, and should not be dismissed. (Doc. 30.) This

suit is brought under the federal question jurisdiction of this Court pursuant to 28 U.S.C. § 1331.

## I.   Background

Mrs. Dix was an employee of Louisiana Health Service & Indemnity Company d/b/a Blue Cross/Blue Shield of Louisiana. For several years, she suffered degenerative disc problems that required multiple spinal cord surgeries. (Doc. 1 at 2.) As a result, her experiences with chronic back illnesses rendered her fully disabled under the Long Term Disability Policy ("the LTD Policy") of the company, and she was unable to return to work. Initially, Mrs. Dix was granted long-term disability benefits in June 2007, and she was to maintain those benefits for as long as she remained totally disabled under the meaning of the LTD Policy.

On July 1, 2010, Mrs. Dix's benefits were terminated, and she timely appealed the decision. Mrs. Dix advised through her appeal that she had not been released by her treating physicians. However, an independent medical examination conducted by Dr. Kale found that Mrs. Dix could return to work. Mrs. Dix disputed the findings of Dr. Kale, alleging that he purposely misrepresented information about her health condition. Plaintiff filed suit to recover benefits under the LTD Policy following her termination, due to alleged fraudulent behavior by Dr. Kale for misrepresenting the findings of her treating physicians. (Doc. 1 ¶ XLIII.) Mrs. Dix seeks an order for

reinstatement of her long-term disability benefits, an order enforcing future benefits, interests on all past due amounts, attorney's fees, and costs. (Doc. 1, *Prayer for Relief*.) In the instant motion, Dr. Kale seeks dismissal of Mrs. Dix's claims against him in their entirety, on the basis that Mrs. Dix may not assert a claim for benefits under ERISA against him, and that any claim of fraud against him is preempted by ERISA.

## II.   Treatment as a Rule 12(b)(6) Motion to Dismiss

As an initial matter, the Court must decide whether the instant motion can be treated as a motion to dismiss, or whether it must be converted to a motion for summary judgment. In considering a motion to dismiss for failure to state a claim, a court must typically limit itself to the contents of the pleadings, including their attachments. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "If, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d).

However, when considering a Rule 12(b)(6) motion, a court may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims. See *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (finding consideration of insurance contracts unattached to the

3

complaint permissible where they were attached to the motions to dismiss, referred to in the complaint, and central to the plaintiffs' claims); see also *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

The Summary Description of the Long Term Disability Program was incorporated by reference in Mrs. Dix's complaint. See, e.g., Doc. 1, at 2-13. This Summary Description is central to Mrs. Dix's claims. Thus, the Court concludes that the instant motion should be reviewed as a motion to dismiss under the standards of Rule 12(b)(6), and not converted to a motion for summary judgment.

## III.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a

4

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

## IV. Analysis

### A. Proper Defendant for Claims Under ERISA

Mrs. Dix's petition asserts a claim for violations counter to her rights established under ERISA. 29 U.S.C. § 1001. A suit to enforce those rights is governed by Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132((a)(1)(B). This section allows a participant or beneficiary under an ERISA plan to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his right to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Courts within this Circuit, however, have held that, under Section 1132((a)(1)(B), "the Plan is the only proper party defendant to plaintiff's claim." *Roig v. Limited Long Term Disability Program, et al*, 2000 WL 1146522, at *9 (E.D.La. 2000). See *Walker v. Kimberly Clark Corp.*, 2010 WL

5

611007, at *6 (N.D. Miss. Feb. 17, 2010) ("Although the Fifth Circuit has not addressed the issue, district courts in this Circuit have agreed with the Ninth Circuit that the Plan is the only proper defendant in a suit to recover benefits."); *Haydel v. HealthSmart Benefit Solutions, Inc.*, No. 09-3032, 2009 WL 2856330 (E.D. La. Aug. 28, 2009); *Sullivan v. Monsanto Co.*, No. 06-4437, 555 F.Supp.2d 676 (E.D. La. Mar. 31, 2008) ("Defendants are correct that the Plan is the only proper party for any cause of action under section (a)(1)(B) for recovery of Plan benefits."); *Cuccio v. Roberson Advertising Services, Inc.*, No. 04-1293, 2004 WL 21896618 (E.D. La. Sept. 28, 2004) ("the health care plan is the only proper defendant to a claim for benefits under ERISA."); *Murphy v. Wal-Mart Assocs.' Group Health Plan*, 928 F. Supp. 700 (E.D. Tex. 1996); *Crawford v. Exxon Corp.*, 851 F. Supp. 242, 244 (M.D. La. 1994).[1]

It is worth noting that in *Murphy*, the court asserted that "[s]everal cases have found that defendants, other than the plan, who were sued for benefits, such as employers, corporate officers, and unions, were not proper parties because they did not possess control or discretion over the management or administration of the trust or its assets." *Murphy*, 928 F. Supp. at 709. Indeed, this would suggest that there are cases where those who stand in managerial or administrative positions that exercise authority

---

[1] The Fifth Circuit has not addressed this issue in explicit detail; however, the District Courts of this Circuit, many in unpublished opinions, have taken the Ninth Circuit approach in determining whether a Plan is the only proper party in an ERISA suit to recover benefits. See *Murphy*, 928 F. Supp. at 709, and *Walker*, 2010 WL 611007 at *6.

or control *could*, in fact, be sued by the plaintiff. *Murphy* acknowledges this. However, the Court in *Murphy* found that such persons must stand in a fiduciary relationship to the plan, and that in spite of this, the court "has found no case where an entity other that the plan was successfully sued in its individual capacity for benefits under § 1132(a)(1)(B)." *Id.*

Mrs. Dix's petition, in pertinent part, prays for, (A) an order reinstating long-term disability benefits due Petitioner under the LTD plan retroactive to the date disability benefits were wrongfully terminated; (B) an order enforcing Petitioner's rights to future benefits under the LTD plan and enjoining defendants from suspending or reducing Petitioner's benefits; (C) for pre-judgment interest on all past due amounts under the LTD plan. (Doc 1, Prayer for Relief.) Essentially, these claims seek to recover disability benefits under the LTD Policy of her employer that is further governed by ERISA. As such, a claim to recover benefits from this policy is proper when it is brought against the plan itself, and in limited situations, *administrators* of the plan. Dr. Kale is not a representative of the plan, nor does the plaintiff assert that Dr. Kale is an administrator of the plan. Further, Dr. Kale does not exercise control or discretion over the management, administration, or control of any aspect of the plan. Significantly, Mrs. Dix, in her opposition to the instant motion, acknowledges that Dr. Kale is an independent agent who acted outside the confines of ERISA. (Doc. 30 at 8.) Therefore, the

Defendant's Motion to Dismiss, on the basis that Dr. Kale is not a proper defendant for a claim for benefits under ERISA, is GRANTED.

### B. Plaintiff's State Law Tort Claims

Mrs. Dix acknowledges that Dr. Kale was neither a fiduciary nor an administrator of the ERISA plan but merely an independent contractor who had no authority in making the final ERISA determination. (Doc. 30 at 7.) As such, she avers that Dr. Kale should be considered an "independent agent" for purposes of ERISA, as his legal duty to Mrs. Dix fell outside of the scope of ERISA. Further, she avers that her state law tort claims do not relate to ERISA, as they are not derived from the rights and obligations of the plan, and should be allowed to proceed against Dr. Kale independently for the tortious conduct. (Doc. 30 at 8.) In opposition, Dr. Kale asserts that any claims of fraudulent misrepresentation made by Mrs. Dix are preempted by ERISA. (Doc. 19-2 at 4.)

### i.   Controlling Fifth Circuit Law

It is uncontested that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). However, courts have issued varying rulings as to whether state tort claims "relate to" an ERISA claim, and whether such claims are preempted by federal law. The Fifth Circuit maintains that the proper inquiry in an ERISA preemption analysis is to first determine if the benefit

8

plan at issue constitutes an ERISA plan; if so, then the state law claims must relate to the plan. *Woods v. Texas Aggregates, L.L.C.*, 459 F.3d 600, 602 (5th Cir. 2006), citing *Hernandez v. Jobe Concrete*, 282 F.3d 360, 361 (5th Cir. 2002). To determine if the state law claims "relate to" the plan, a court must consider "(1) whether the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) whether the claims directly affect the relationship among the traditional ERISA entities - the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Woods*, 459 F.3d at 602.

In some cases, consideration has been given to "whether the claims involve conduct by ERISA entities," and whether such information "is critical to the inquiry of whether ERISA preemption exists." *Gulf Coast Plastic Surgery, Inc. v. Standard Ins. Co.*, 562 F.Supp.2d 760, 768 (E.D. La. Jun. 3, 2008). In doing so, the courts of the Fifth Circuit have found instances where state law tort claims were not preempted. In *Gulf Coast Plastic Surgery*, the Court found that the tort claims against an individual defendant insurance agent fell outside the scope of ERISA § 502(a) because there was no implication of "a relationship governed by ERISA and because their resolution does not require interpretation of an ERISA plan." *Id.* The plaintiff's insurance agent assured the plaintiff that he effectively increased his policy limit. After the plaintiff suffered a disabling injury, however, it was

9

discovered that while he was entitled to full disability benefits under the policy, he was only eligible for the initial amount of his policy, and not the increased amount represented to him by the insurance agent. *Id.* at 763-764. The court found that the plaintiff's state law tort claims, as they relate to that particular defendant, were only "peripherally connected to an ERISA plan." *Id.* at 769.

The Court in *Gulf Coast Plastic Surgery* took its direction from an earlier Fifth Circuit case where the Court held that ERISA did not preempt state law tort claims for fraudulent inducement and negligent misrepresentation. *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir. 1990). In *Perkins*, the Court held that "an insurance agent who fraudulently induced the insured plaintiff to surrender coverage under an existing policy, to participate in an ERISA plan which did not provide the promised coverage, 'relates to' that plan only indirectly. A state law claim of that genre… is not preempted by ERISA." *Id.* at 473-474.

Nevertheless, the Fifth Circuit has acknowledged that state law tort claims may be preempted by ERISA. See *McNeil v. Times Ins. Co.*, 205 F.3d 179 (5th Cir. 2000). In *McNeil*, the Court found that claims for breach of contract, breach of the duty of good faith and fair dealing, negligent misrepresentation, common law discrimination, waiver, estoppel and ratification were all preempted. *Id.* at 191. It recognized that "ERISA's

10

preemption of state law claims is extensive. We have held that § 1144(a) preempts a state law claim if that claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan, and if that claim directly affects the relationship between traditional ERISA entities." *Id.*

The Fifth Circuit has also instructed that when a plaintiff "characterize[s] her cause of action as arising under the common law of fraud, but she seeks a determination of her eligibility for benefits under an ERISA-governed plan, and she prays for relief specifically provided by § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)," such claim "is completely preempted by ERISA... ." *McGowin v. ManPower International, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004), citing *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999). Here, the Court adopted the language from a previous ruling which found that "[s]ection 502, by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action." *McGowin*, 363 F.3d at 559.

Further, the Fifth Circuit has found that even when a claim for fraudulent inducement is brought against a third party, and not the actual insurer, if the "essence of [plaintiff's] claim is that her benefits under the plan were improperly denied," such a claim can be preempted by ERISA. *Hubbard*

11

*v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 946 (5th Cir. 1995). In *Hubbard*, the plaintiff made two basic claims of fraudulent inducement under Texas state law against a third party defendant, one of which alleged that the third party disseminated information regarding secret coverage guidelines of her health benefits plan, in violation of the Texas Deceptive Trade Practices Act. *Id.* at 945.[2] On this particular state law tort claim, the Court determined that resolution of the claim would require inquiry into guidelines of coverage and non-coverage under the plan, as well as whether such guidelines affected a determination of coverage for the plaintiff. As such, it found that "[s]uch questions are intricately bound up with the interpretation and administration of an ERISA plan." *Id.* at 946. Thus, the claim was preempted.

### ii. Plaintiff's Assertions

In the instant case, Mrs. Dix asserts that Dr. Kale is an independent agent who acted outside the parameters of ERISA. She alleges that Dr. Kale misrepresented facts concerning the health of Mrs. Dix, and as a result, she was severely harmed. (Doc. 30 at 8.) Mrs. Dix goes on to assert that Dr. Kale

---

[2] The plaintiff also brought a fraudulent inducement claim against the third party for false advertisement, in which the plaintiff claimed that "she was damaged by the advertising in that she relied on the assurances of quality coverage and thus chose not to procure other insurance coverage to insure that the expansive medical treatments she needed could be paid for." *Hubbard*, 42 F.3d at 946. The Court modeled its decision on a previous ruling with similar facts, holding that the claim was not preempted by ERISA since "it does not implicate the plan's administration of benefits or 'affect the relations among the principal ERISA entities (the employer, the plan, and the beneficiaries).'" *Id.* at 947, citing *Perkins*, 898 F.2d at 473.

had a duty to not intentionally harm her, and to not commit a state law tort against her, as he was acting outside the scope of ERISA and its protected actors.[3] Mrs. Dix notes that the Fifth Circuit held "the important factor in ERISA preemption is the relationship between the parties involved in the claim itself and whether that claim is intricately bound with an ERISA plan." *Hobson v. Robinson*, 75 Fed. App'x 949, 955 (5th Cir. 2003). The Court noted the "critical factor was that the fraudulent inducement claim did not require interpretation and administration of the ERISA policy." *Id.* Mrs. Dix maintains, as in *Hobson*, that the tort claims against Dr. Kale can be interpreted without any reference to the LTD Policy.

Plaintiff's arguments are unpersuasive. Although the Fifth Circuit has recognized that state tort law claims for fraud and misrepresentation occurring outside of ERISA may be brought, Plaintiff has not shown that her state law tort claims are not intricately bound to her ERISA claims. Indeed, as Dr. Kale points out, and this Court agrees, Mrs. Dix seeks relief only in the form of an "award of disability insurance benefits under the LTD [P]olicy and for all benefits wrongfully denied her since the LTD benefits were improperly terminated." (Doc. 1 ¶ XLVI.) Additionally, as established in *McGowin*, Mrs. Dix has tried to characterize her fraud claim as arising out of a separate cause of action; but, if such a cause of action is tied to a determination for

---

[3] Mrs. Dix directs the Court to *Hobson v. Robinson*, 75 Fed. App'x 949 (5th Cir. 2003), where the Court found that claims for fraud and misrepresentation were not preempted by ERISA.

disability benefits under an insurance plan, then it is necessarily preempted by ERISA. *McGowin v. ManPower International, Inc.*, 363 F.3d at 559.

Plaintiff urges this Court to find Dr. Kale to be an independent agent outside of ERISA who should answer for fraudulently misrepresenting her medical information which resulted in the termination of her disability benefits, and that he breached his fiduciary duty to her in doing so. Even if the Court found that Dr. Kale was, for purposes of liability outside of ERISA, considered an independent agent that *could* be held separately liable on a fraud claim, Mrs. Dix still has not shown why such a claim should be differentiated from her claims for benefits under ERISA. There has been no prayer for separate damages relating to the tort claims against Dr. Kale. Her prayer seeks only the return of disability benefits under the plan, attorney's fees, and costs. (Doc 1, Prayer for Relief.)

Case law favors the notion that when a state tort claim "relates to benefits offered as part of [ ] employment, the provisions of ERISA apply." *Ford v. Unum Life Ins. Co. of America*, 465 F. Supp.2d 324, 331 (D. Del. Dec. 6, 2006). The plaintiff in *Ford* brought claims similar to that of Mrs. Dix against her insurer, for a return of LTD benefits and a state tort claim for breach of contract. The plaintiff's claim for breach of contract was found to be preempted by ERISA because it had "a connection to a benefit plan[.]" *Id.*

14

More importantly, and analogous to the issue here, the plaintiff in *Ford* asserted that her medical information provided by her treating physician was misrepresented by the health care professionals hired by the insurer to review the information. While there was no fraud allegation made against the health care professionals involved, a dispute arose between the doctors as to what the plaintiff's condition entailed. *Id.* at 328-30. The court never questioned whether such an inquiry was to be conducted outside of ERISA. Indeed, the court conducted its analysis of the plaintiff's claims under an "abuse of discretion" standard of review applicable in ERISA cases to determine whether the *plan administrator* made an arbitrary and capricious decision to terminate benefits. *Id.* at 331. Thus, the question of liability on medical findings was imputed to the plan, not the health care professionals.

Also, the Supreme Court has found that "ERISA does not require plan administrators to accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003). "[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.* at 834. Thus, even though Mrs. Dix alleges that Dr. Kale misrepresented her medical information, her argument fails as a matter law, as the Supreme

15

Court does not find it necessary for the opinions of a treating physician to be specially considered. To the extent Mrs. Dix disputes whether the opinions of her treating physicians were considered, any such claims necessarily relate to the ERISA plan.

### iii. Analysis of Fraud

Further, Plaintiff has failed to establish that Dr. Kale owed a separate, independent duty to Mrs. Dix. The Court has analyzed the elements of a potential fraud claim in relation to a duty owed to Mrs. Dix. Louisiana law defines fraud as a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. La. Civ. Code art. 1953. For a Louisiana tort claim of fraud to succeed, the plaintiff must show: "(1) a misrepresentation of material fact; (2) made with the intent to deceive; and (3) causing justifiable reliance with resultant injury." *Foley & Lardner, L.L.P. v. Aldar Investments, Inc.*, 491 F. Supp.2d 595, 604 (M.D. La. May, 30, 2007) (citing *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1131 (5th Cir.1988), vacated on other grounds, *Fryar v. Abell*, 492 U.S. 914, 109 (1989)).[4]

Plaintiff asserts that the record contains clear indications of fraud by Dr. Kale in the Complaint (Doc. 30 at 7, Doc. 1). However, this Court has yet

---

[4] The elements of fraud are used interchangeably with the elements of intentional misrepresentation. See *Kadlec Medical Center v. Lakeview Anesthesia Assoc.*, 527 F.3d 412, 418 (5th Cir. 2008).

16

to find any fraud. There is no known misrepresentation of material fact by Dr. Kale, as he reported his findings on Mrs. Dix's medical conditions based on the information provided to him. Second, there is no clear indication of intent to deceive, or even any purported reasons why Dr. Kale would have an interest in intentionally deceiving Mrs. Dix or the findings of her state of health. He did not know her personally and had no responsibilities to consult with her. Third, to the extent that Mrs. Dix claims she relied on Dr. Kale's assessment of her condition and that the resulting injury was the loss of her benefits, the Court concludes that Mrs. Dix's claims are against the actual plan, not Dr. Kale, in part because the ultimate decision to terminate her benefits was made by the plan administrators. Mrs. Dix has not specifically identified a duty that Dr. Kale owed to her individually, and the Court cannot independently find one.

V.  <u>Conclusion</u>

Accordingly,

**IT IS ORDERED** that Defendant Scott A. Kale's **Motion to Dismiss (Doc. 19)** is **GRANTED**.

Baton Rouge, Louisiana, this 23rd day of September, 2013.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**